UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DWAYNE C. FERRIS,<br><br>Plaintiff,<br><br>v.<br><br>FORD MOTOR COMPANY,<br><br>Defendant. | Case No. 18-cv-03216-JSW<br><br>**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 12, 13 |

Now before the Court for consideration is the motion for judgment on the pleadings filed by Defendant Ford Motor Company ("Ford"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the reasons set forth below, the Court GRANTS Ford's motion for judgment on the pleadings with leave to amend.

**BACKGROUND**

Plaintiff Dwayne Ferris filed the above-captioned complaint ("Complaint") on April 27, 2018. Ford removed the case on May 30, 2018. Mr. Ferris alleges that the Ford truck he purchased on March 3, 2010 had latent defects and, over the course of his ownership, developed additional problems. (Dkt. No. 1 ("Complaint") ¶¶ 10, 37, 41.) Mr. Ferris alleged that an express warranty accompanied the purchase of his vehicle but did not allege the terms of the warranty or its duration. (*Id.* ¶¶ 5, 9, 36, 63.) The Complaint contains three causes of action under the Song-Beverly Act: (i) breach of express warranty, (ii) breach of implied warranty, and (iii) violation of § 1793.2.

The Court will address additional allegations as necessary below.

//

**ANALYSIS**

**A.   Applicable Legal Standard.**

A motion for judgment on the pleadings challenges the legal sufficiency of the claims asserted in a complaint. For the purposes of this motion, the Court must accept the allegations of the non-moving party as true. *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990) (internal citations omitted). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.*; *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) ("The principal difference between motions filed pursuant to Rule 12(b) and Rule 12(c) is the time of filing. Because the motions are functionally identical, the same standard of review applicable to a Rule 12(b) motion applies to its Rule 12(c) analog.") A plaintiff must plead sufficient facts to show that he has a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 552 (2007).

Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(c) motion, but a "court may consider facts that are contained in materials of which the court may take judicial notice." *Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 (9th Cir. 1999) (internal quotations and citation omitted). A court may also consider documents attached to the complaint or "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (internal quotations and citation omitted).

**B.   Song-Beverly Act Claims.**

"Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law." *Hauter v. Zogarts*, 14 Cal. 3d 104, 117 (Cal. 1975). The Song-Beverly Act (the "Act"), a California consumer protection statute, creates an implied warranty of merchantability where the seller guarantees that consumer goods: (i) pass without objection in the trade under the contract description; (ii) are fit for the ordinary purposes

2

for which such goods are used; (iii) are adequately contained, packaged, and labeled; and (iv) conform to the promises or affirmations of fact made on the container or label. Cal. Civ. Code § 1791.1. Under the Act, an implied warranty's duration is "coextensive" with an express warranty accompanying the same consumer good, but "in no event shall such implied warranty have a duration of *less than sixty days nor more than one year following the sale* of new consumer goods to a retail buyer." *Id.* § 1791.1(c) (emphasis added). The statute of limitations for all claims under the Act is four years. Cal. Com. Code § 2725(1); *Krieger v. Nick Alexander Imps., Inc.*, 234 Cal. App. 3d 205, 215 n.5 (Cal. Ct. App. 1991).

Under California law, a claim for breach of warranty accrues upon tender of delivery unless "a warranty explicitly *extends to future performance* of the goods *and* discovery of the breach *must await the time of such performance*," in which case "the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725(2) (emphasis added). As an implied warranty arises by operation of law rather than through express agreement by the parties, California courts have "consistently held" that an implied warranty does not "explicitly extend[] to future performance of the goods." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 134 (Cal. Ct. App. 2008) (collecting cases). Therefore, a claim for breach of implied warranty accrues, and, therefore, the statute of limitations begins to run, upon tender of delivery. *Mitchell v. Skyline Homes*, No. 09-cv-2241-KJM, 2010 WL 1791281, at *1 (E.D. Cal. May 4, 2010).

Based on the allegations in the Complaint, Mr. Ferris's claim for breach of implied warranty is time-barred.[1] The breach of implied warranty occurred at the time tender of the vehicle was made—on March 3, 2010. On this date, the statute of limitations for Mr. Ferris's breach of implied warranty claim began to run. Without tolling, the statute of limitations expired, at the latest, in March of 2014. Mr. Ferris filed this lawsuit more than four years after that date. His claim for breach of implied warranty is therefore time-barred. *See Atkinson v. Elk Corp. of*

---

[1] The Court declines to consider Exhibit A to the Declaration of Spencer P. Hugret. *See Heliotrope*, 189 F.3d at 981.

3

*Texas*, 142 Cal. App. 4th 212, 217 (Cal. Ct. App. 2006).

Ford is incorrect to the extent it argues that the *timing* of Mr. Ferris's discovery of the defect (assuming the discovery occurred more than one year after the purchase of the vehicle) prohibits Mr. Ferris's breach of implied warranty claim. *Mexia v. Rinker Boat Co.,* 174 Cal. App. 4th 1297 (Cal. Ct. App. 2009) held that section 1791.1 circumscribes only the period in which a defect must exist: under *Mexia* section 1791.1 does not create a deadline for discovering a latent defect or giving notice to the seller of the same. *Id.* at 1310-11. Though *Mexia* was in some ways inconsistent with contemporary jurisprudence, its underlying logic was sensible. After all, "[t]hat a defect *first appears* after a[n implied] warranty has expired does not necessarily mean that the defect *did not exist* when the buyer purchased the product." *Donlen v. Ford Motor Co.*, 217 Cal. App. 4th 138, 189 (Cal. Ct. App. 2013) (emphasis added).

Many district courts in the Ninth Circuit at first treated *Mexia* with skepticism—limiting its application or labeling it an aberration and declining to apply it. In 2015, the Ninth Circuit clarified *Mexia*'s reach. After analyzing California state court treatment of *Mexia*, the Ninth Circuit concluded "there is not convincing evidence that the California Supreme Court would decide the latent defect discovery issue that was presented in *Mexia* differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1222 (9th Cir. 2015) (noting federal courts must follow decision of intermediate state appellate courts absent convincing evidence the state's highest court would decide differently). Noting "mixed treatment" of *Mexia* by California federal district courts, the *Daniel* court concluded "we must adhere to state court decisions—not federal court decisions—as the authoritative interpretation of state law." *Id.* at 1223. Therefore, under California law, a latent defect need not be discovered within the implied warranty period (in other words, within a year of purchase) to be actionable under the Act. *Id.*

Yet, *Mexia* only extends so far. For the purposes of the instant motion, *Mexia* stands only for the proposition that a defect need not be discovered during the one-year implied warranty period. *Mexia* affects neither the length of the statute of limitations for a breach of implied warranty nor the point at which a breach of warranty occurs. *See id.* at 1305 ("In the case of a latent defect, a product is rendered unmerchantable, and the warranty of merchantability is

4

breached, by the existence of the unseen defect, *not by its subsequent discovery*." (emphasis added)); *see also Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 880–81 (N.D. Cal. 2018), *order clarified*, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018) (applying *Mexia* and holding timing of discovery of latent defect not determinative of occurrence of breach). The *Mexia* court did not confront these issues. To the extent Mr. Ferris attempts to stretch *Mexia*'s holding to encompass either concept, Mr. Ferris is incorrect.[2]

The Court disagrees with Mr. Ferris's suggestion that the statute of limitations for a breach of implied warranty is tolled for the duration of an express warranty. In *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087 (N.D. Cal. 2014), the Ninth Circuit explicitly rejected this notion and specifically disagreed with the reasoning in *Ehrlich v. BMW of North America, LLC*, 801 F. Supp. 2d 908 (C.D. Cal. 2010) and *Falco v. Nissan North America Inc.*, No. 13-cv-0686-DDP, 2013 WL 5575065 (C.D. Cal. Oct. 10, 2013)—two cases upon which Mr. Ferris relies. In *MacDonald*, the Ninth Circuit observed that *Erlich* and *Falco* both based their holdings on mistaken readings of *Krieger*, a California state court opinion: ". . . nothing in [*Krieger*] supports tolling the statute of limitations on an implied warranty claim for the duration of an express warranty. Rather, the *Kreiger* court held that the applicable statute of limitations for a Song-Beverly claim is four years as provided by section 2725." 37 F. Supp. 3d at 1101 (citation omitted). The opinion continued: "While the *Krieger* decision allows that the date of accrual of the statute of limitations may be tolled for attempted repairs within the one-year implied warranty, nowhere does it suggest that the implied warranty's statute of limitations can be extended for the

---

[2] Ford relies upon *Atkinson*, but that case is only marginally helpful. In *Atkinson*, the pivotal issue was the duration of an implied warranty of merchantability under a separate statutory regime (Magnuson-Moss). 142 Cal. App. 4th at 228-32. Further, *Atkinson* is factually distinguishable from the case at hand. In *Atkinson*, the consumer good at issue (roof shingles) *failed* five-and-a-half years after tender of delivery. *Id.* at 227. Here, the plaintiff has alleged that a defect existed at the time he purchased his truck, not that a defect *arose* after the period of implied warranty and the statute of limitations had both expired.

Ford argues that *Atkinson* and *Mexia* are at odds and that *Atkinson* should control. As the Ninth Circuit has observed, however, *Mexia* is not in "plain conflict" with *Atkinson*: unlike *Mexia*, *Atkinson* did not address the issue of whether section 1791.1 "create[s] a deadline for discovering latent defects." *Daniel*, 806 F.3d at 1223 (discussing both cases).

5

duration of an express warranty." *Id.*[3] The terms of the express warranty do not toll the statute of limitations for a breach of implied warranty. Mr. Ferris's breach of implied warranty claim is time-barred.

Mr. Ferris's breach of express warranty claims (claims one and three in the Complaint) are also time-barred. The statute of limitations for a breach of express warranty is four years. *Krieger*, 234 Cal. App. 3d at 213-14. Again, under California law, a claim for breach of warranty accrues upon tender of delivery unless the warranty "explicitly extends" to future performance of the goods and discovery of the breach "must await the time of such performance" in which case "the cause of action accrues when the breach is or should have been discovered." Cal. Com. Code § 2725(2). While Mr. Ferris alleges the existence of an explicit warranty, he does not allege any information about the warranty, including its duration or the details of its guarantee of future performance. *See Cardinal*, 169 Cal. App. 4th at 132-33 (holding that express warranty which lacked duration defined in units of time did not fall under § 2725(2) exception).[4] In other words, he alleges no facts to allow the Court to conclude that the claim for breach did not accrue upon delivery of the vehicle. Accordingly, the statute of limitations for the breach of express warranty claims accrued upon tender of delivery of the vehicle, and the clock ran out on the breach of explicit warranty claims in March of 2014. *See Mexia*, 174 Cal. App. 4th at 1306; *see also Krieger*, 234 Cal. App. 3d at 213-14 (Song-Beverly Act claim accrues when breach occurs "regardless of the aggrieved party's lack of knowledge of the breach.").

Accordingly, all three of Mr. Ferris's claims are time-barred unless a tolling scheme applies. As the Court explains below, none do.

**C.    Theories of Postponed Accrual of the Statute of Limitations and Tolling.**

Three theories emerge from the parties' papers that would, in one way or another, toll the

---

[3] Even if the express warranty *did* toll the statute of limitation for a breach of implied warranty, Mr. Ferris never alleges the duration or terms of the express warranty at issue. Therefore, had the Court determined that tolling was appropriate, the Court would not know how long the toll should last.

[4] Mr. Ferris attached his sales contract to the complaint but does not point to any explicit warranty contained therein. (Complaint ¶ 9.) In its own examination of the document, the Court did not find any (legible) explicit warranty.

6

statute of limitations or delay its accrual. The Court turns first to the delayed discovery rule. The delayed discovery rule postpones accrual of a cause of action until the plaintiff discovers or has reason to discover the cause of action. *WA Southwest 2, LLC v. First Am. Title Ins. Co.*, 240 Cal. App. 4th 148, 156-57 (Cal. Ct. App. 2015) (citations omitted). A plaintiff relying on the discovery rule must plead (i) the time and manner of discovery and (ii) his inability to have made earlier discovery despite reasonable diligence. *Id.* at 157.

Mr. Ferris concedes that the discovery rule applies and avers, albeit perfunctorily, that the discovery rule should delay the accrual of the statute of limitations here. Yet, Mr. Ferris points to no allegations in the Complaint that describe the time and manner of the discovery of the vehicle's defects or demonstrate why he was unable to discover the defects earlier despite reasonable diligence. As Mr. Ferris pleads facts for neither element, he cannot rely on the delayed discovery rule to delay the accrual of the statute of limitations. *See id.* at 156-57.

The Court next turns to Mr. Ferris's theories of tolling. Mr. Ferris contends that the statute of limitations for his Song-Beverly Act claims is tolled under two theories: *American Pipe* tolling and equitable tolling under California law. So-called *American Pipe* tolling hails from *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). In that case, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. Once the statute of limitations has been tolled, it remains tolled until class certification has been denied or until the suit is conclusively no longer a class action. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1464 (Cal. Ct. App. 2015). The claims in the senior class action case and later-filed individual case need not be identical but must be substantively similar—based on the same claims and subject matter and similar evidence. *Id.* at 1466. *American Pipe* tolling can only apply where two key policy considerations are respected: first, the protection of efficiency in litigation as promoted by class actions and, second, protection of a defendant from unfair or stale claims. *See Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1120-24 (Cal. 1988).

At the heart of the parties' present disagreement is whether *American Pipe* tolling applies

to California claims where the senior class action is unfolding in a different jurisdiction. This type of tolling is known as cross-jurisdictional tolling. Ford points to *Clemens v. DaimlerChrysler Corp.*, 530 F.3d 852, 860 (9th Cir. 2008), *opinion amended and superseded on other grounds*, 534 F.3d 1017 (9th Cir. 2008) to argue that California does not recognize cross-jurisdictional tolling. In *Clemens*, the Ninth Circuit, noting that the California Supreme Court had not adopted cross-jurisdictional tolling, opined:

> . . . [T]he weight of authority and California's interest in managing its own judicial system counsel us not to import the doctrine of cross-jurisdictional tolling into California law. The rule of *American Pipe*—which allows tolling within the federal court system in federal question class actions—does not mandate cross-jurisdictional tolling as a matter of state procedure.

*Id.* at 860 (concluding that the filing of out-of-state action did not toll statute of limitations). Meanwhile, Mr. Ferris argues that, while the California Supreme Court may not have explicitly "adopted" cross-jurisdictional tolling, the California Court of Appeal *has*. Mr. Ferris points to *San Francisco Unified School District v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1322–23 (Cal. Ct. App. 1995). In this case, due to an earlier-filed class action proceeding in the United States District Court for the Eastern District of Pennsylvania, the court permitted tolling for claims brought later in a California state court. This result, avers Ferris, signifies that California in practice permits cross-jurisdictional tolling.

It is true that the *San Francisco Unified* court allowed tolling, but, in that opinion, the California Court of Appeal did not squarely state that cross-jurisdictional tolling was permitted in California. In fact, the issue of the propriety of cross-jurisdictional tolling did not appear to be before the court. Rather, the parties disagreed as to whether a plaintiff who opted out of a class action was entitled to *American Pipe*-tolling and whether the Pennsylvania-based federal class action provided meaningful notice to the defendants with respect to defending the California state court plaintiff's individual claims. *See id.* at 1338-40.

Indeed, Mr. Ferris has provided, and the Court has found, no case that cites *San Francisco Unified* for the precise proposition for which Mr. Ferris now wields it. In *Smith v. American Home Products Corp.*, No. B-163861, 2004 WL 765946, at *4 (Cal. Ct. App. Apr. 12, 2004), for

example, the issue before the Court of Appeal was whether plaintiff's opting out of class certification in a federal class action disqualified her from tolling the statute of limitations of her later-filed individual claims. The *Smith* court cites *San Francisco Unified* for the proposition that tolling is available for an individual plaintiff who opts out of a class action.

Mr. Ferris acknowledges in his Opposition that courts in the Ninth Circuit relied upon *Clemens* because "they were required to" do so. *See Hendrix v. Novartis Pharm. Corp.*, 975 F. Supp. 2d 1100, 1111 (C.D. Cal. 2013); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1185 (9th Cir. 2009) (citation omitted). This Court, too, is "required to" apply Ninth Circuit precedent. There is nothing in the parties' papers that persuades this Court that it should not follow *Clemens*. Accordingly, the Court, applying Ninth Circuit precedent, declines to "import the doctrine of cross-jurisdictional tolling into California law." *See Clemens*, 530 F.3d at 860.

Even assuming *arguendo* that California law allows cross-jurisdictional tolling, Mr. Ferris has failed to sufficiently plead *American Pipe* tolling. The Complaint contains only conclusory allegations that Mr. Ferris was a putative class member, that Ford would not be prejudiced in gathering evidence or defending the above-captioned case, that *Darne v. Ford Motor Co.*, No. 13-cv-3594 (the Illinois class action) is substantively similar to the case at hand, and that tolling the instant case's statute of limitations would encourage efficiency and economy in litigation. (Complaint ¶¶ 16-34.) Notably, Mr. Ferris does not include factual allegations about the putative class or the claims at issue in *Darne* or explaining why he could not have discovered his individual claims until "on or after December 27, 2013." (*Id.* ¶¶ 16, 25.) This deficiency makes it impossible for the Court to determine whether the above-captioned case and *Darne* concern similar subject matter or would entail the use of similar evidence. The Court therefore cannot discern whether Ford would not be prejudiced, at this late date, in gathering evidence for its defense. The Court is also unable to determine whether Mr. Ferris is a member of *Darne*'s putative class because, in addition to providing no factual allegations about *Darne*, Mr. Ferris does not include factual allegations describing how his grievances are similar to those of the putative class.

Mr. Ferris's second theory of tolling is equitable tolling under California law. This theory

9

of tolling is a judicially-created doctrine that "operates to suspend or extend a statute of limitations in order to ensure that a limitations period is not used to bar a claim unfairly." *Hatfield*, 564 F.3d at 1185 (citation omitted). A court considers three factors when deciding to apply equitable tolling under California law: (i) timely notice to a defendant in the filing of the first claim; (ii) lack of prejudice to the defendant in gathering evidence to defend against the second claim; and (iii) good faith and reasonable conduct by the plaintiff in filing the second claim. *Id.* (citation omitted). "As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute." *Id.* (citation and quotation omitted). Ordinarily, to benefit from equitable tolling, a "plaintiff must demonstrate he has been diligent in pursuit of his claims." *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1808 (2018).

This theory of tolling, too, is insufficiently pled. The Court has already explained why the Complaint is deficient in alleging facts regarding adequate notice and lack of prejudice to Ford. Further, given the unexplained delay in filing this case, the Court is also unconvinced that Mr. Ferris acted in good faith. Mr. Ferris alleges that he was unaware of *Darne* but does not allege when he discovered it. (*Id.* ¶¶ 17, 26.) Without more, it is unclear to the Court whether Mr. Ferris waited to file the above-captioned matter on the belief that *Darne* would adequately dispatch his claims or whether Mr. Ferris's late-filed Complaint constitutes dereliction. *See Hatfield*, 564 F.3d at 1186 (opining plaintiff "acted in good faith belief that the . . . statute of limitations was tolled during the pendency of the [first] action."). It is Mr. Ferris's burden to sufficiently allege tolling grounds in his Complaint. *See Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006). This he has failed to do.

## CONCLUSION

For the reasons discussed above, Ford's motion for judgment on the pleadings is GRANTED, but the Court will allow Mr. Ferris leave to amend. *See, e.g.*, *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990) (court should grant leave to amend unless amendment would be futile). If Mr. Ferris intends to file an amended complaint, he must do so no later than

April 19, 2019.  In the event of future motion practice, the Court urges counsel to carefully proofread future filings in order to ensure each brief provides full, correct case citations to the Court.

**IT IS SO ORDERED.**

Dated: March 8, 2019

_____
JEFFREY S. WHITE
United States District Judge